## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| Richard Bosarge | § | CIVIL ACTION NO: 2:14-cv-02153 |
| | § | |
| *Plaintiff,* | § | |
| | § | SECTION "JTM" (KWR) |
| v. | § | |
| | § | |
| Cheramie Marine, L.L.C. | § | |
| | § | |
| *Defendant.* | § | JURY DEMAND |

### Plaintiff's Response to Defendant's Motion for Partial Summary Judgment

The Court should deny Defendant's motion because:

1. Defendant waived its *McCorpen* defense by failing to plead it;

2. Even if Defendant did not waive its *McCorpen* defense, fact issues exist as to whether Defendant would have hired Plaintiff had he disclosed a four-year old back "injury" that resulted in only one visit to the doctor and where Plaintiff subsequently received a full duty release;

3. Defendant's vessel was unseaworthy because it was not fit to travel in 12-14 foot seas and had an unfit crew; and

4. Plaintiff is entitled to punitive damages on his maintenance and cure claim since Defendant terminated his benefits in response to the filing of this lawsuit and refused to reinstate benefits despite the fact that Plaintiff's treating physician does not believe Plaintiff has reached Maximum Medical Cure.

### I.

### Facts

Plaintiff Richard Bosarge seriously injured his back while working as a relief captain

for Defendant.  The vessel he was assigned to encountered extremely rough weather.

1

Bosarge and another crew member (Curtis Johnson) repeatedly asked the captain on duty to take the boat to safer waters, but their concerns were ignored.  Ex. A (Johnson witness statement); Ex. B (Bosarge witness statements).  One member of the crew was acting erratic and kept hitting himself in the face.  Ex. A.  The crew also kept fake urine aboard the vessel.  *Id*.  The captain presumably refused to turn the boat around for fear of the crew being drug tested when they returned to the docks.  Regardless, the captain refused to heed the Bosarge's and John's safety concerns and Bosarge seriously injured his back while being tossed around in the rough seas.

After the incident, Bosarge's employer sent him for treatment to its company doctor (Dr. Cenac).  Dr. Cenac ordered an MRI, which showed a protrusion, an annular tear, and a disc abutting the nerve root.  *See* Ex. C (MRI report).  Dr. Cenac thought his injury was serious enough to prescribe Bosarge narcotic pain medication and limit Bosarge to performing clerical/sedentary duty work.  Ex. D (July 21, 2014 note).  On September 3, 2014, Dr. Cenac noted that Bosarge was not improving and ordered additional diagnostic tests that are usually used to determine whether surgery is necessary.  *See* Ex. E (September 3, 2014 note).  The tests were performed on September 4, 2014 and sent to Dr. Cenac the same day.  Ex. F.  Bosarge then filed the instant lawsuit on September 19, 2014.  Doc. #1.  Within a week of Bosarge filing suit, Dr. Cenac abruptly changed course and wrote a letter to Defendant's claims' adjuster placing Bosarge at MMI.  Ex. G.  In the meantime, Bosarge began treating with an orthopedic specialist (Dr. Paul Fenn) who did not have ties to his employer.  Dr. Fenn disagreed with Dr. Cenac and recommended steroid injections.  *See* Ex. H.  Still, Defendant cut off Bosarge's maintenance and cure benefits on the basis of Dr.

2

Cenac's letter, but refused to reinstate benefits when Bosarge's treating physician offered a differing opinion.

Bosarge sent several maintenance and cure demands to Defendant.  Ex. I.  They were all ignored.  Dr. Fenn also noted that Bosarge had not reached maximum medical cure.  Ex. J.  This finding obligated Defendant to reinstate maintenance and cure benefits.  But Defendant still refused.  This type of conduct is sufficient to meet the "willful and wanton" standard required for imposition of punitive damages in a maintenance and cure case.  But, instead of reinstating maintenance and cure benefits, Defendant filed the instant motion alleging that it is a *McCorpen* defense.  Yet, this defense has never been pleaded and cannot be raised for the first time in a motion for summary judgment.  Consequently, Defendant waived its *McCorpen* defense.

But, even if Defendant had not waived this defense, summary judgment would still be improper.  Defendant's *McCorpen* defense is based on the fact that Bosarge had minor back pains in 2011 that required a grand total of **one** visit to the doctor.  Ex. K.  Bosarge's problems were not serious enough for the doctor to order an MRI or even prescribe formal physical therapy.  *See id*.  After Bosarge stopped treating, he underwent a thorough pre-employment physical for Parker Drilling in 2013.  An MRI was performed.  The results showed no abnormalities.  Ex. L.  A Functional Capacity Evaluation was performed as well.  Ex. M.  The results showed he was capable of full duty work.  *Id*.  The final result was the medical clinic finding that Bosarge was "employable without accommodations."  Ex. N. Defendant's motion acknowledges that its *McCorpen* defense would not hold water if

Bosarge had been cleared for duty before he applied to work for Defendant. But that is just what happened here. *See id.*

Defendant's unseaworthiness argument is misguided as well. Defendant had two employees on duty at the time of the incident. One of the crew members on duty kept hitting himself in the face and was apparently on drugs. Ex. A. The other crew member (Defendant's captain) repeatedly ignored the safety concerns of the two crew members who were off watch. *Id.*; Ex. B. This is the hallmark of an unfit, incompetent crew (which makes a vessel unseaworthy). Moreover, given the problems the crew faced on this voyage, it is clear that Defendant's vessel was not fit to safely handle the 12-14 foot seas that the vessel knowingly took on. The Court should deny Defendant's motion.

## II.

### The Court Should Deny Defendant's Motion

As the Court is well-aware, summary judgment is only appropriate when there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court never weighs the evidence or finds the facts; instead, the Court's role is narrowly limited to the threshold issue of whether a genuine issue exists as to material facts requiring trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Thus, Bosarge's evidence must be believed as true, all doubts are to be resolved against Defendant, and all reasonable inferences are to be drawn in Bosarge's favor. *See Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999).

A.     **Defendant waived its *McCorpen* defense by failing to plead it.**

"In responding to a pleading, a party must affirmatively state any avoidance or

4

affirmative defense . . ." Fᴇᴅ. R. Cɪᴠ. P. 8(c)(1).[1]  If the affirmative defense is not pleaded in the Answer, it is waived.  *See Davis v. Huskipower Outdoor Equip. Corp.,* 936 F.2d 193, 198 (5th Cir. 1991). If a defendant does not include an affirmative defense in its Answer, the defendant "cannot revive the defense in a memorandum in support of a motion for summary judgment." *Funding Sys. Leasing Corp. v. Pugh,* 530 F.2d 91, 96 (5th Cir. 1976); *Lebouef v. Island Operating Co., Inc.*, 342 Fed. Appx. 983, 984 (5th Cir. 2009).

Here, Defendant seeks partial summary judgment based on the *McCorpen* defense. But Defendant failed to plead this defense (or refer to it in any way) in its Answer.  Doc. #7. Indeed, Plaintiff sent an Interrogatory to Defendant that asked "[i]f you have not provided maintenance, cure, and/or compensation to Plaintiff, please state each and every fact upon which that decision is based."  Ex. P at #22.[2]  Defendant did not mention the *McCorpen* defense.  Instead, in only stated that it ceased paying maintenance and cure benefits because Plaintiff had supposedly reached maximum medical improvement.  *Id*.  Consequently, Defendant has waived its defense and cannot revive it via a motion for summary judgment. The Court should deny Defendant's motion.

**B.      Even if Defendant had not waived its *McCorpen* defense, summary judgment would still be improper since Defendant would have hired Plaintiff even had it known about his minor, pre-existing condition.**

To establish the *McCorpen* defense, an employer must show that: (1) the plaintiff intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the plaintiff; and (3) a connection exists between

---

[1] Moreover, since the *McCorpen* defense is based on fraud, it must be pleaded with particularity.  Fᴇᴅ. R. Cɪᴠ. P. 9(b).
[2] This response has never been supplemented.

the withheld information and the injury complained of in the lawsuit.  *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir.2005) (citing *McCorpen v. Cent. Gulf S.S. Corp.,* 396 F.2d 547 (5th Cir.1968)).  "If the vessel owner would have employed the seaman even had the requested disclosure been made, concealment [of the preexisting condition] will not bar the seaman's recovery of maintenance and cure."  *Jauch v. Nautical Services, Inc.*, 470 F.3d 207, 212 (5th Cir. 2006).

Here, Defendant would have hired Bosarge even had he disclosed his prior medical history.  The back "injury" that forms the basis of this defense was extremely minor.  It only required one visit to the doctor.  *See* Ex. K.  After being released by his doctor, but before going to work for Defendant, Bosarge had an MRI (which was normal), passed a Functional Capacity Evaluation, and was cleared for full duty work.  Ex. L; Ex. M; Ex. N.  Indeed, it is undisputed that Bosarge worked for 3 years after his 2011 "injury" without needing any medical attention.  At the very least, a genuine issue of material fact exists for the jury to decide.  Therefore, the Court should deny Defendant's motion.

**C.    Fact issues exist on Plaintiff's unseaworthiness claim.**

A vessel owner's "duty to furnish a seaworthy ship is absolute and completely independent of his duty under the Jones Act to exercise reasonable care."  *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960).  The duty requires a vessel owner to "furnish a vessel and appurtenances reasonably fit for their intended use."  *Id*. at 550.  "There is no suggestion in any of the decisions . . . that the duty is any less with respect to an unseaworthy condition which may be only temporary."  *Id*. at 549.  As a result, "the shipowner's actual or constructive knowledge of the unseaworthy condition is not essential to his liability."  *Id*.

6

"A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (internal citations omitted); *See also Webb v. Dresser Indus.*, 536 F.2d 603, 606 (5th Cir. 1976). A vessel is also unseaworthy when an unsafe method of work is used to perform vessel services. *Rogers v. Eagle Offshore Drilling Serv.*, 764 F.2d 300, 303 (5th Cir. 1985); *Burns v. Anchor-Wate Co.*, 469 F.2d 730 (5th Cir. 1972).

Defendant's vessel was unseaworthy because it was not reasonably fit to travel in the 12-14 seas it encountered. The crew members who were off duty were thrown around in their bunks. Ex. A and Ex. B. One crew member was tossed an entire foot in the air. Ex. A. This was not a sudden, unpredictable weather phenomenon. The captain knew the type of seas he was encountering and had an opportunity to avoid the danger. *See* Ex. A and Ex. B. There is a factual dispute for the jury to resolve on whether the vessel was reasonably fit to safely deal with these known, hazardous conditions.

Besides not being able to safely withstand the known (and expected) sea conditions, the vessel's crew was unfit as well. One crew member repeatedly slapped himself in the face. Ex. A. The crew also stored fake urine on the vessel, presumably since they could not pass surprise drug tests without the fake urine. *Id.* Bosarge and Johnson repeatedly tried to get the captain to turn the boat around due to the unsafe weather conditions, but the captain refused. Ex. A and Ex. B. He presumably did this due to fear of him (or his deckhand) being drug tested. Or maybe he simply was not a competent enough captain to recognize the safety risk he was taking. *See id.* Regardless, the crew of the vessel was unfit and the vessel was, therefore, unseaworthy. As a result, the Court should deny Defendant's motion and allow the jury to make this determination.

7

**D.    Fact issues exist as to whether Defendant willfully and wantonly cut off Plaintiff's maintenance and cure benefits.**

"Among the most pervasive incidents of the responsibility imposed upon a ship owner for the health and security of sailors was liability for the maintenance and cure of seaman becoming ill or injured during the period of their service." *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 727 (1943).  "A claim for maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship." *Atlantic Sounding Co. Inc. v. Townsend*, 557 U.S. 404, 407-08 (2009) (citing *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001)).  "When there are ambiguities or doubts [regarding maintenance and cure], they are resolved in favor of the seaman." *Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962); *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 735 (1943) ("If leeway is to be given in either direction, all considerations which brought the liability into being dictate it should be on the sailor's behalf."); *Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 79-80 (5th Cir. 1990).  The obligation to pay maintenance and cure continues until it "has been determined that the seaman has reached maximum medical cure." *Johnson*, 893 F.2d at 79.  If an employer terminates maintenance and cure based on an alleged determination of "maximum medical cure," the determination must be unambiguous and unequivocal. *Id.* at 79-80.  Further, **the employer is legally obligated to reinstate benefits if a new physician subsequently finds that the seaman is not at maximum medical cure**.  *Id.*  at 80 (findings by a subsequent physician that there is "the possibility of physical improvement . . . would require a finding in favor of" the seaman.).

"If a shipowner is arbitrary and capricious in failing to pay maintenance and cure, he

is liable for attorney's fees." *Mayne v. Omega Protein*, 370 Fed. Appx. 510, 516 (5th Cir. 2010).  Additionally, a seaman is entitled to punitive damages when his employer willfully and wantonly disregards its maintenance and cure obligations.  *Townsend*, 557 U.S. at 424. "Examples of behavior that could merit punitive damages have included (1) laxness in investigating a claim[3]; (2) termination of benefits in response to the seaman's retention of counsel or refusal of a settlement offer; and (3) failure to reinstate benefits after diagnosis of an ailment previously not determined medically.  *Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985); *Holmes v. J. Ray McDermott & Co., Inc.*, 734 F.2d 1110, 1118-19 (5th Cir. 1984) (willfulness finding was appropriate when four prior doctors found nothing wrong with the seaman, but employer failed to "reinstate Holmes' maintenance and cure when it learned that [a fifth doctor] had diagnosed" a back injury.).

Here, Defendant terminated maintenance and cure benefits based on Dr. Cenac's MMI letter.  But Defendant refused to reinstate benefits when Dr. Fenn wrote a letter disagreeing with Dr. Cenac.  *See* Ex. J and Ex. I.  This is the exact type of conduct that was found to be "willful and arbitrary" in *Holmes*.  *Holmes*, 734 F.2d at 1118-19 (willfulness finding was appropriate when four prior doctors found nothing wrong with the seaman, but employer failed to "reinstate Holmes' maintenance and cure when it learned that [a fifth doctor] had diagnosed" a back injury.).  This makes perfect sense.  The law requires an employer to resolve all doubts in favor of providing maintenance and cure.  *Vaughan*, 369 U.S. at 532 ("When there are ambiguities or doubts [regarding maintenance and cure], they

---

[3] Any laxness in investigating a claim, including failing to make an inquiry on a physician can entitle a seaman to punitive damages as a matter of law.  *Breese v. AWI, Inc.*, 823 F.2d 100, 104-05 (5th Cir. 1987).

are resolved in favor of the seaman."). This is why the Fifth Circuit requires employers to reinstate maintenance and cure benefits in situations like this. *See Johnson*, 893 F.2d at 80 (determination by a subsequent physician that there is "the possibility of physical improvement . . . would require a finding in favor of" the seaman.). Defendant failed in this obligation. As a result, the Court should deny Defendant's motion.[4]

### III.

### Conclusion

The Court should deny Defendant's motion.

Respectfully submitted,

ARNOLD & ITKIN LLP

*/s/ Noah Wexler*

_____

Noah M. Wexler
LA State Bar No. 34995
6009 Memorial Drive
Houston, TX 77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850

Cory D. Itkin (Pro Hac Vice)
Texas State Bar No. 24050808
ARNOLD & ITKIN LLP
6009 Memorial Drive
Houston, Texas  77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850

**ATTORNEYS FOR PLAINTIFF**

_____

[4] Moreover, the timing of Defendant's decision to terminate maintenance and cure benefits cannot be overlooked. Defendant terminated Bosarge's benefits within a week of him filing suit. While this decision was ostensibly based on Dr. Cenac's MMI letter, it is difficult to believe that the timing of Dr. Cenac's letter, who previously appeared to be working Bosarge up for surgery, was simply coincidental.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on June 19, 2015, a true and correct copy of this motion was served on all counsel of record by uploading the same to the Court's CM/ECF System.

*/s/ Noah Wexler*

_____

Noah M. Wexler